THE STATE, EX REL. ERKARD, *v.* INDUSTRIAL COMMISSION OF OHIO ET AL.

(No. 87AP-1013—Decided September 27, 1988.)

*Elliott, Heller & Maas, Rush E. Elliott* and *Richard L. Magill,* for relator.

*Anthony J. Celebrezze, Jr.,* attorney general, and *James A. Barnes,* for respondent Industrial Commission.

*David R. Cook,* for respondent Cleveland Cement Contractors.

BROWN, J. Relator, Alvin Erkard, filed this original action requesting that this court issue a writ of mandamus ordering respondent, the Industrial Commission, to vacate its order affirming the calculation of his average weekly wage at $408.62 and his full weekly wage at $244.48, and to issue an order finding that he is entitled to a full and average weekly wage calculation of $589.60 in accordance with R.C. 4123.61.

This action was referred to a referee pursuant to Civ. R. 53 and Section 13, Loc. R. 11 of the Tenth District Court of Appeals. On June 7, 1988, the referee issued a report and recommendation including findings of fact and conclusions of law. She recommends that the requested writ be denied.

Relator has filed objections to the report. For the reasons that follow, we overrule the objections and deny the requested writ.

The sole question raised in this case is the rate of temporary total disability compensation relator should receive as a result of the ankle injury he incurred as a laborer in the construction industry on September 4, 1985. The Industrial Commission claim file has been stipulated as the evidence in this action. A review of that file reveals that a claims examiner for the Bureau of Workers' Compensation ("bureau") set relator's full weekly wage at $244.48 and his average weekly wage at $408.62. The full weekly wage amount was set by reference to relator's gross regular earnings for the weekly pay period that ended immediately prior to the injury. Relator worked sixteen regular hours during that week. The average weekly wage

amount, as shown on the claims examiner's worksheet, represents relator's gross earnings for the year preceding September 4, 1985, $5,312.06, divided by 13, the number of weekly pay periods in which relator did some work during the year. Most of these thirteen weeks fell during the summer months of 1985. During some of the thirteen weeks, relator worked only one eight-hour day. In other weeks, he worked three or four eight-hour days. Including overtime, relator worked a full forty-hour week only three times during the year preceding his injury. Apparently, during the other thirty-nine weeks of the year relator was unemployed.

Subsequent to the bureau's action, relator filed a C-86 motion requesting that his average weekly wage and full weekly wage be set at $589.60. This amount reflects the earnings relator would have received if he had worked a full forty-hour week. The district hearing officer and the regional board of review of the Industrial Commission thereafter affirmed the bureau's calculation of relator's full and average weekly wage.

The Industrial Commission, through a staff hearing officer, affirmed the regional board of review. The officer's rationale was stated, as follows:

"It is the finding of the Commission that claimant was on a seasonal layoff during the winter of 1984-1985 pursuant to the predictable weather conditions of northern Ohio and the recurrent constraints imposed upon his chosen vocation, the construction trade. The finding and order of the Regional Board is well substantiated both mathematically and statutorally [sic], and provides for substantial justice to the claimant as provided in R.C. 4123.61."

This court's referee found no abuse of discretion, the relator not having shown that the commission failed to afford him substantial justice.

We first address the controversy concerning relator's average weekly wage. R.C. 4123.61 sets forth the matters that control the setting of relator's average weekly wage. The statute states, as follows:

"The average weekly wage of an injured employee at the time of the injury or at the time disability due to the occupational disease begins shall be taken as the basis upon which to compute benefits.

"* * *

"* * * In ascertaining the average weekly wage for the year previous to the injury, or the date the disability due to the occupational disease begins any period of unemployment due to sickness, industrial depression, strike, lockout, or other cause beyond the employee's control shall be eliminated.

"In cases where there are special circumstances under which the average weekly wage cannot justly be determined by applying this section, the commission, in determining the average weekly wage in such cases, shall use such method as will enable it to do substantial justice to the claimants."

The average weekly wage amount, therefore, is reached by assessing the claimant's earnings "for the year preceding the injury." The commission, however, should exclude from the average weekly wage calculation periods of unemployment due to causes beyond the claimant's control. Also, if there are "special circumstances," the commission should adopt another method of computing the average weekly wage if the usual method leads to an unjust result.

In computing the average weekly wage, the bureau's claims examiner apparently considered relator to have been unemployed for reasons beyond his control for thirty-nine of the fifty-

two weeks preceding his injury. As stated *supra,* relator's gross earnings amount for the previous year was divided by thirteen, the latter number representing weeks in which relator did some work.

However, it might be argued that the bureau's claims examiner should have excluded a greater time period from this calculation, since relator usually did not work a full forty-hour week during those thirteen weeks. Recent authority from this court supports the proposition that the bureau should exclude *any* period of unemployment that is due to reasons beyond the claimant's control. In *State, ex rel. Wireman,* v. *Indus. Comm.* (Aug. 16, 1988), No. 87AP-125, unreported, this court determined that the commission should exclude even single days of unemployment from the average weekly wage calculation if the unemployment was due to a cause beyond the claimant's control.

The staff hearing officer of the commission did not determine whether relator's unemployment during the thirteen weeks in question was due to causes beyond relator's control. The evidence in the claim file is vague as to what was causing relator to be unemployed part-time during the summer of 1985. Because of this vagueness, the staff hearing officer perhaps could have affirmed the bureau's calculation on the basis that relator had failed to establish that his part-time unemployment during the thirteen weeks in question was due to causes beyond his control. Instead, the staff hearing officer focused on relator's unemployment during winter 1984-1985. The officer apparently concluded that relator's employment was seasonal in nature, that his unemploy-

ment in the winter was due to predictable conditions which imposed recurrent restraints on his trade, and that the bureau therefore should not have excluded those periods of unemployment. Under this reasoning, the average weekly wage set by the bureau, taken as a whole, was more generous than required under the statute and, therefore, does not constitute an abuse of discretion about which relator can complain.

The reasoning of the staff hearing officer has merit. The purpose of the average weekly wage calculation is "to find a fair basis for award for the loss of future compensation." *Riley* v. *Indus. Comm.* (1983), 9 Ohio App. 3d 71, 73, 9 OBR 90, 92, 458 N.E. 2d 428, 430. The average weekly wage figure should not provide a windfall to the claimant. Regardless of whether a seasonal layoff should be considered a period of unemployment within the claimant's control or whether it should be considered a "special circumstance" that requires an alternative method of calculating the average weekly wage, in the end, the average weekly wage should approximate the average amount that the claimant would have received had he continued working after the injury as he had before the injury.[1] See *State, ex rel. Rutledge,* v. *S & H Painting Co.* (Aug. 26, 1986), Franklin App. No. 85AP-559, unreported, at 4.

Applying the foregoing to the facts herein, we find that the average weekly wage set by the bureau's claims examiner was overly generous. The commission did not abuse its discretion as to relator in affirming the bureau's calculation which set the average weekly wage at an amount greater than the statute requires. Relator can-

---

[1] *State, ex rel. Branham,* v. *Indus. Comm.* (1981), 3 Ohio App. 3d 72, 3 OBR 83, 443 N.E. 2d 1019, is distinguishable. There is no indication in that case whether the claimant's employment was seasonal. In this case, there are indications that the relator's employment was seasonal.

not argue that the commission had a clear legal duty to reverse or modify the bureau's calculation. Further, the relator has no clear legal right to an average weekly wage of $589.60. Said figure assumes that relator regularly would have worked forty hours a week after his injury. Evidence in the record shows that he rarely worked a full forty-hour week and only worked sporadically during the year. The claim file reveals no evidence indicating that relator's employment would have ensured more regular hours in the future. Relator had no clear legal right to an average weekly wage set at $589.60, or at any amount greater than that reflecting the irregular, seasonal employment practices of his vocation.

In sum, relator has no legal basis for challenging the average weekly wage set by the bureau and affirmed by the commission.

Relator's arguments with regard to the full weekly wage are equally groundless. R.C. 4123.61 states that the relevant wage for the first twelve weeks of temporary total disability compensation is "the full weekly wage of the claimant at the time of the injury * * *." The bureau's claims examiner chose the pay period closest to the time of the injury. The two-days' work he performed during that pay period is generally representative of the amount of work he had done during the other pay periods closest to his injury. We find no abuse of discretion in choosing the pay period just preceding his injury. Further, relator argues that he is entitled to a full weekly wage of $589.60. Such an amount bears no relation to relator's work history, especially that just preceding his injury. We find that the bureau had no legal duty to set the full weekly wage at a higher amount. The commission did not abuse its discretion in affirming the amount set by the bureau's claims examiner.

In conclusion, the objections to the report of the referee are overruled, the report and recommendation are approved and adopted, and in accordance with said recommendation, the requested writ is denied.

*Objections overruled;*
*writ denied.*

McCORMAC and BOWMAN, JJ., concur.

WILLIAM F. BROWN, J., retired, of the Coshocton County Court of Common Pleas, sitting by assignment.