DECISION ON OBJECTIONS TO MAGISTRATE'S DECISION
{¶ 1} Relator, Village of Huntsville, commenced this original action requesting a writ of mandamus that orders respondent, Industrial Commission of Ohio, to vacate its order determining that respondent, John R. Hurley ("claimant"), was entitled to have his average weekly wage and full weekly wage set at $652.92 and $631.80, respectively. Relator requests that the commission be ordered to set both claimant's average weekly wage and full weekly wage at $19.23.
 {¶ 2} Pursuant to Civ.R. 53 and Section (M), Loc.R. 12 of the Tenth Appellate District, this matter was referred to a magistrate who issued a decision, including findings of fact and conclusions of law. (Attached as Appendix A.) In her decision, the magistrate concluded the commission did not abuse its discretion in setting claimant's average weekly wage and full weekly wage at the amount noted. Accordingly, the magistrate determined the requested writ should be denied.
 {¶ 3} Relator has filed objections to the magistrate's decision. Initially, relator raises a factual objection:
The Magistrate erred in failing to conclude that Mr. Hurley's $56,000.00 settlement completely compensated Mr. Hurley for all future lost time from Super Food and that, therefore, factoring Super Food Wages into the AWW and FWW set in the claim against the Village creates an unlawful doublerecovery for Mr. Huntley.
 {¶ 4} As the magistrate's decision notes, claimant was employed full-time with Super Food Services and alleged that he contracted pulmonary fibrosis as a result of exposure to welding fumes while he worked as a welder and large vehicle mechanic for Super Food. The commission agreed, and Super Food paid relator temporary total disability compensation.
 {¶ 5} Thereafter, claimant filed a second first report of injury form, contending he contracted pulmonary fibrosis due to his service as a volunteer firefighter for relator. As the fire chief for relator's volunteer fire department, claimant was compensated $1,000 per year for his services.
 {¶ 6} Ultimately, claimant and Super Food entered into a settlement agreement and release. According to the magistrate's decision, "claimant agreed to pay back Super [Food] $43,000 of the $53,000 in benefits which Super had paid to claimant provided that claimant had been successful in establishing that his condition of pulmonary fibrosis was directly related to his employment with relator as a volunteer firefighter." (Magistrate's Decision, ¶ 27.) In its objection, relator contends the $56,000 in payments provided for in the settlement agreement represent future compensation for prospective lost time from Super Food.
 {¶ 7} Initially we note that the schedule of settlement payments provides for a total payment of $56,000, not $53,000. According to the settlement agreement, the schedule of payments included a $28,000 payment on or around the date the agreement was approved, a $14,000 payment on the one-year anniversary date, and a second $14,000 payment on the two-year anniversary date. In the event that claimant died prior to either of the anniversary dates, the agreement provided the payments would be made to his estate. As relator properly notes, the settlement agreement and release further provides that "[f]uture workers' compensation liability was used in calculating the settlement identified in this agreement involving Nash Finch [Super Food]."
 {¶ 8} While the magistrate's decision is ambiguous regarding the specific point raised in relator's factual objection, we agree that, to the extent the magistrate's characterization of the settlement agreement differs from the actual language of the agreement, relator's first factual objection is sustained.
 {¶ 9} Relator's first legal objection states:
The Magistrate's Decision fails to apply the law controlling the application of "special circumstances" to the setting of a claimant's average weekly wage[.]
 {¶ 10} During oral argument, relator agreed that, in the absence of a potential claim against claimant's full-time employer Super Food and with claimant's claim allowed against relator, the commission would be entitled under the special circumstances provisions of R.C. 4123.61 to aggregate claimant's income from his position as a firefighter with the wages from his position with Super Food in arriving at his average weekly wage. Relator, however, contends that because claimant's claim for pulmonary fibrosis was administratively allowed against Super Food, and claimant further has received under the settlement agreement payment for future benefits from that full-time employer, the special circumstances addressed in R.C. 4123.61 no longer exist. Accordingly, relator contends the commission properly should consider only claimant's $1,000 income as fire chief in assessing his average weekly wage.
 {¶ 11} Relator's objection and supporting contentions are premised on claimant's having received or being entitled to receive compensation from Super Food under the settlement agreement that purportedly compensates claimant for wages he would not be able to earn from Super Food due to his pulmonary fibrosis. Contrary to relator's contentions, the settlement agreement and release specifically require that claimant, "[u]pon a final determination that Mr. Hurley is entitled to occupational disease benefits or injury benefits or upon the receipt of occupational disease benefits for the medical condition of pulmonary fibrosis in any workers' compensation claim filed against the Village or Township of Huntsville or the Huntsville Fire Department, Mr. Hurley agrees to immediately pay Nash Finch [Super Food] one-third (1/3) of the benefits received up to a maximum cap of Forty-three Thousand Dollars ($43,000.00). Once the Forty-three Thousand Dollars ($43,000.00) has been reached, Mr. Hurley is entitle to 100% of any future workers' compensation benefits payable in the claim. * * * The obligation of Mr. Hurley to pay Nash Finch [Super Food] also applies to any settlement proceeds from the pulmonary fibrosis workers' compensation claims, subject to the Forty-three Thousand Dollars ($43,000.00) cap."
 {¶ 12} Though not critical to our decision, the parties' explanation of the background to the settlement agreement lends understanding to the circumstances giving rise to this action. According to claimant's counsel, Super Food appealed the administratively allowed pulmonary fibrosis claim to the common pleas court, where, as a result of Super Food's medical expert, claimant faced losing the allowed claim against Super Food. To preclude that result, claimant entered into a settlement with Super Food that acknowledged relator's potential sole responsibility for claimant's pulmonary fibrosis and prescribed that Super Food's payments under the agreement would be paid back if relator was found to have legal responsibility for claimant's condition.
 {¶ 13} While we recognize a $13,000 difference between the maximum Super Food is liable to pay under the settlement agreement and the amount claimant is required to repay, claimant's counsel represented, and relator's counsel did not dispute, that the difference was paid to him as attorney fees. The net result is that Super Food's settlement agreement with claimant did not conclusively compensate claimant. Rather, as a result of litigation regarding the administrative allowance of the pulmonary fibrosis claim against Super Food, claimant agreed to return any money he received if, in fact, he became entitled to benefits from relator. The claim has been allowed against relator, and relator presented no medical evidence to refute that claimant's occupational disease occurred in the performance of his duties as a firefighter for the Village of Huntsville.
 {¶ 14} Thus, the factual premise on which relator relies in urging that the special circumstances provision of R.C. 4123.61
should not apply in this case is not present: the benefits from Super Food that would make the special circumstances provision inapplicable under relator's argument must be returned pursuant to the settlement agreement, as claimant is entitled to benefits from relator. In the end, relator's contentions reduce, in part, to an assertion that relator should not be responsible for the amount Super Food has paid to claimant. Whether subsequent proceedings before the commission may entail such considerations, the issue here is setting average and full weekly wages. Under the circumstances of this case and the noted settlement agreement requiring claimant to repay Super Food, we cannot say the commission abused its discretion in refusing to consider Super Food's payments to claimant when the commission calculated claimant's average and full weekly wages. Accordingly, relator's first legal objection is overruled.
 {¶ 15} Relator's second legal objection states the following:
The Magistrate's Decision fails to apply the law controlling the setting of a claimant's full weekly wage.
 {¶ 16} Specifically, relator urges that had the magistrate properly applied State ex rel. Smith v. Indus. Comm. (1933),127 Ohio St. 217, the magistrate would have determined full weekly wage looking only to relator's income as a firefighter. According to relator, Smith held that compensatory rates are to be calculated based only on those wages earned in the job in which the worker was injured. While acknowledging that R.C.4123.61 created the concept of special circumstances that altered the effect of Smith, relator contends R.C. 4123.61's "special circumstances" apply only in setting average weekly wage, not full weekly wage. Thus, relator contends Smith still controls setting claimant's full weekly wage and mandates that it be set at $19.23.
 {¶ 17} Smith, however, did not address full weekly wage, but only average weekly wage. Accordingly, Smith is not controlling law that either the commission or the magistrate was required to apply in determining full weekly wage. Moreover, nothing in R.C. 4123.61 suggests that the special circumstances applicable to average weekly wage cannot apply to calculating full weekly wage as it relates to temporary total disability compensation, and from a policy perspective we can discern no reason the full weekly wage should be determined in a manner apart from the average weekly wage in this case. Accordingly, the magistrate did not err in so concluding. Relator's second legal objection is overruled.
 {¶ 18} Relator's third legal objection states:
The Magistrate's Decision failed to consider or apply the Supreme Court's rule prohibiting a volunteer fireman from using wages earned in a separate and distinct line of work to calculate his AWW and FWW and, further, failed to consider the Supreme Court's rule that the Industrial Commission must specifically state the evidence and rationale for a decision. See State ex exrel. Smith v. Indus. Comm. (1933), 127 Ohio St. 217 andMitchell v. Robbins Myers, Inc. (1983), 6 Ohio St.3d 481[.]
 {¶ 19} Contrary to relator's contention that the commission failed to articulate the basis for its decision, the commission stated that it based its decision on the W2's claimant submitted in support of his application, and it further explained that special circumstances applied in this case. Indeed, the commission noted the Smith case and the subsequent statutory language permitting the commission to consider special circumstances in its determinations. The commission further noted the case of State ex rel. Wireman v. Indus. Comm. (1990),49 Ohio St.3d 286 and the requirements that the average weekly wage must do substantial justice and not provide a windfall.
 {¶ 20} The commission thus provided a sufficient basis for this court to discern the factual and legal premises on which it based its decision and to review for an abuse of discretion. Substantial justice could be done only if claimant's wages from his full-time employment also were factored into his average and full weekly wages. Relator's third legal objection is overruled.
 {¶ 21} Following independent review pursuant to Civ.R. 53, we find the magistrate has properly determined the pertinent facts and applied the salient law to them, with the exception that the settlement agreement was for $56,000, not $53,000. Accordingly, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained in it, with the noted exception. In accordance with the magistrate's decision, the requested writ is denied.
Objections sustained in part and overruled in part; writdenied.
Brown and Klatt, JJ., concur.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State of Ohio ex rel. : Village of Huntsville, : Relator, : v. : No. 04AP-281 Industrial Commission of Ohio : (REGULAR CALENDAR) and John R. Hurley, : Respondents. :
 MAGISTRATE'S DECISION Rendered on September 13, 2004 Thompson, Meier Dersom, and Adam H. Leonatti, for relator.
Jim Petro, Attorney General, and Gerald H. Waterman, for respondent Industrial Commission of Ohio.
Scott M. Knisley, L.P.A., and Daniel S. Knisley, for respondent John R. Hurley.
 IN MANDAMUS {¶ 22} Relator, Village of Huntsville, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which determined that respondent John R. Hurley ("claimant") was entitled to have his average weekly wage ("AWW") and full weekly wage ("FWW") set at $652.92 and $631.80 respectively. Relator requests that the commission be ordered to set both claimant's AWW and FWW at $19.23.
Findings of Fact:
 {¶ 23} 1. On November 15, 2000, claimant filed a workers' compensation claim against Super Food Services ("Super"), his full-time employer, alleging that he had contracted pulmonary fibrosis as a direct result of exposure of welding fumes while working as a welder and large vehicle mechanic for Super.
 {¶ 24} 2. By orders dated December 11, 2000, January 21 and February 23, 2001, the commission concluded that claimant's condition of pulmonary fibrosis was causally related to his employment with Super and temporary total disability ("TTD") compensation was awarded and paid by Super.
 {¶ 25} 3. On January 7, 2002, claimant filed a second first report of injury form (FROI) alleging that he had contracted pulmonary fibrosis due to exposure during his employment as a volunteer firefighter for relator.
 {¶ 26} 4. Relator argued that the doctrine of res judicata should bar claimant from asserting that he had contracted pulmonary fibrosis as a direct result of his service as a volunteer firefighter inasmuch as he had already established that the condition of pulmonary fibrosis had been contracted as a result of his work as a welder for Super. The commission rejected relator's argument and ultimately concluded, by orders dated August 27 and December 3, 2002, that claimant's claim should be allowed for the condition of pulmonary fibrosis against relator.
 {¶ 27} 5. Claimant and Super entered into a settlement agreement and release whereby claimant agreed to pay back Super $43,000 of the $53,000 in benefits which Super had paid to claimant provided that claimant had been successful in establishing that his condition of pulmonary fibrosis was directly related to his employment with relator as a volunteer firefighter.
 {¶ 28} 6. Thereafter, claimant filed a motion with regards to his AWW and FWW. Relator argued that the commission should use as claimant's annual salary the sum of $1,000 which claimant had been paid for serving as chief of the fire department. Claimant asserted that his wages during his full-time employment with Super should be used in calculating his AWW and FWW.
 {¶ 29} 7. By order dated October 9, 2002, a district hearing officer ("DHO") determined that claimant's AWW should be set at $552.92, and his FWW at $631.80.
 {¶ 30} 8. By order dated August 21, 2003, a staff hearing officer ("SHO") determined that claimant's AWW and FWW should be set at $19.23 based upon his salary of $1,000 per year as a volunteer firefighter. The SHO reasoned as follows:
* * * The employer's counsel submitted the case of State exrel. Smith v. Industrial Comm., 127 OS17 (1933) to support his argument that the claimant's full and average weekly wages should not be based upon the claimant's wages earned with his full time employment. The Staff Hearing Officer finds this argument to be persuasive. The Court in that case refused to include claimant's wages earned in his regular job which was not connected in any way with the employment in which his injury occurred. Furthermore, the Staff Hearing Officer finds the Smith case is still good law in as much as it is still cited to under the Ohio Revise[d] Code (i.e., 4123.61, annot. 18).
 {¶ 31} 9. Claimant appealed and the matter was heard before a deputy of the commission on November 19, 2003. The deputy found that claimant's claim was currently allowed for the following conditions: "pulmonary fibrosis; adjustment disorder with mixed anxiety and depressed mood." The deputy then determined that claimant's AWW should be set at $654.91, and his FWW at $633.54 for the following reasons:
The Smith case, decided in 1933, relied upon Section 1465-79 and 1465-84 of the General Code. In that case, two firefighters were injured while responding to a fire. Both were volunteers. In "civilian" life, one was a baker and one was a restaurant worker. Under the statutes as then written, the Supreme Court found the average weekly wage is limited to that received in the employment in which the injury occurred, where the injured worker "was also generally engaged in another separate and distinct line of work."
Four years after this case was decided, in 1937, the applicable statutes were qualified in Ohio Revised Code 4123.61 by an additional paragraph: "In cases where there are special circumstances under which the average weekly wage cannot justly be determined by applying this section, the Administrator of Workers' Compensation, in determining the average weekly wage in such cases, shall use such method as will enable him to do substantial justice to the claimants."
The more recent case of State ex rel. Wireman v. Indus.Comm., (1990) 49 Ohio St.3d 286 states: "The average weekly wage is designed to find a fair basis for an award of loss of future compensation . . . In calculating this figure two considerations dominate. First, the average weekly wage must do substantial justice to the claimant. Second, it should not provide a windfall." See also State ex rel. Valley Pontiac v. Indus.Comm., (1991) 71 Ohio App. 3d 388, State ex rel. Clarke v.Indus. Comm., (1994) 69 Ohio St.3d 563 and State ex rel. Rileyv. Indus. Comm., (1983) 9 Ohio App. 3d 71.
The Deputy, therefore, finds that the full weekly wage and average weekly wage are set at $633.54 and $654.91, respectively.
This decision is based on the W2's submitted for 1998 and 1999. The full weekly wage is based on the W2 from 1999 ($32,943.91 divided by 52 = $633.54). The average weekly wage is based on both the 1998 and 1999 W2's ($68,090.34 divided by 104 = $654.91). The Deputy found special circumstances exist making it necessary to use a different means of calculating the full and average weekly wages. As calculated, the Deputy finds that the full and average weekly wage fairly compensates the injured worker for lost wages but does not give him a windfall.
 {¶ 32} 10. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law:
 {¶ 33} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show that she has a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v. Indus. Comm. (1967),11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State ex rel. Elliott v. Indus. Comm. (1986),26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State exrel. Lewis v. Diamond Foundry Co. (1987), 29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v. Indus. Comm. (1981),68 Ohio St.2d 165.
 {¶ 34} Relator is contesting the commission's order setting claimant's AWW and FWW by utilizing the "special circumstances" provision of R.C. 4123.61. Relator is not challenging the commission's decision finding that claimant contracted pulmonary fibrosis during the course of his work at a volunteer firefighter, nor is relator contesting the commission's decision that relator is the proper employer for purposes of the payment of compensation in this claim. In fact, there is no medical evidence in the record before this court. As such, regardless of the history of this claim, claimant's allowed conditions have been determined to have been contracted during his employment with relator.
 {¶ 35} R.C. 4123.61 provides, in relevant part, as follows:
The average weekly wage of an injured employee at * * * the time disability due to the occupational disease begins is the basis upon which to compute benefits.
In cases of temporary total disability the compensation for the first twelve weeks for which compensation is payable shall be based on the full weekly wage of the claimant * * * at the time disability due to occupational disease begins[.] * * *
Compensation for all further temporary total disability shall be based as provided for permanent disability claims.
* * * [T]he claimant's * * * average weekly wage for the year preceding * * * the date the disability due to the occupational disease begins is the weekly wage upon which compensation shall be based. In ascertaining the average weekly wage for the year previous to the injury, or the date the disability due to the occupational disease begins any period of unemployment due to sickness, industrial depression, strike, lockout, or other cause beyond the employee's control shall be eliminated.
In cases where there are special circumstances under which the average weekly wage cannot justly be determined by applying this section, the administrator of workers' compensation, in determining the average weekly wage in such cases, shall use such method as will enable him to do substantial justice to the claimants.
 {¶ 36} The AWW is designed to find a fair basis for an award for the loss of future compensation. State ex rel. Wireman v.Indus. Comm. (1990), 49 Ohio St.3d 286. In calculating a claimant's AWW, there are two considerations: first, the AWW must do substantial justice to the claimant; and second, it should not provide a windfall. The commission has discretion in setting the AWW. The commission may exclude certain periods of employment from the calculation or may determine that there are special circumstances warranting a different calculation in order to do substantial justice.
 {¶ 37} In State ex rel. Valley Pontiac Co. v. Indus. Comm.
(1991), 71 Ohio App.3d 388, this court provided the following relevant analysis of the "special circumstances" provision of R.C. 4123.61. In Valley Pontiac, at 393, this court stated as follows:
The term "special circumstances," though undefined, has generally been applied in cases involving uncommon situations. InWireman, the court held that a regular work week of less than forty hours may be a special circumstance which could require a different calculation. This will sometimes require the exclusion of periods of time from the calculation. Similarly, periods of unemployment not strictly due to causes beyond the claimant's control may be excluded where the claimant is incarcerated,State ex rel. Sutherland v. Indus. Comm. (Sept. 25, 1986), Franklin App. No. 85AP-866, unreported, 1986 WL 10744; where the claimant works only three weeks in one year, Riley v. Indus.Comm. (1983), 9 Ohio App.3d 71 * * *; or where the claimant works only thirteen weeks a year due to the seasonal nature of the employment, State ex rel. Erkard v. Indus. Comm. (1988),55 Ohio App.3d 186 * * *. When special circum-stances are established by the claimant, the commission has broad discretion to choose a method for calculating the average weekly wage. The goal is to do substantial justice to the claimant while not providing him a windfall. Generally, "the average weekly wage should approximate the average amount that the claimant would have received had he continued working after the injury as he had before the injury." Erkard, supra, at 188 * * *.
 {¶ 38} In the present case, the evidence submitted indicates that claimant was paid $1,000 per year as a volunteer firefighter because he served as fire chief. During the years that claimant served as a volunteer firefighter, he was also employed full time with Super. Claimant's 1998 W2 shows that he earned $35,146.43 while working for Super and, in 1999, he earned $32,943.91. Inasmuch as the AWW is intended to produce a fair basis upon which an award for which loss of future compensation can be based, this magistrate finds that the commission did not abuse its discretion in using claimant's wage information related to his full-time employment with Super in making the calculation and applying the special circumstances provision of R.C. 4123.61. Claimant contracted pulmonary fibrosis as a result of his service as a volunteer firefighter. As a result, he cannot work — not as a fire fighter and not as a welder/-mechanic either. The commission did not abuse its discretion by including all of claimant's wages to determine his loss of future compensation and to do him substantial justice.
 {¶ 39} Relator also contends that claimant is receiving a windfall because of the settlement agreement entered into between claimant and Super. It is immaterial that this $10,000 is coming from claimant's full-time employer and that it was part of a settlement agreement. However, the settlement agreement provides that claimant will be paying back Super $43,000 of the $53,000 that Super had already paid to claimant in compensation and claimant will be doing so by paying Super one-third of the amount he receives each month until the $43,000 is paid back. As such, although claimant will be keeping $10,000 of the amount already paid to him, relator has not necessarily shown that that would be a windfall and that the commission abused its discretion when it set claimant's AWW.
 {¶ 40} Relator also contends that the commission abused its discretion in setting claimant's FWW. In setting claimant's FWW at $633.54, the commission divided the amount shown on claimant's 1999 W2 form ($32,943.91) by 52. Relator contends that, pursuant to R.C. 4123.61, the commission was required to utilize the Ohio Bureau of Workers' Compensation Resolution No. R80-7-48, in calculating claimant's FWW as follows:
For employees who have been either continuously employed for six weeks prior to the date of injury or who have worked for at least seven days prior to the date of injury, the full weekly wage shall be the higher amount of either:
a) the gross wages (including overtime pay) earned over the aforementioned six week period divided by six, or
b) the employee's gross wages earned for the seven days prior to the date of injury (excluding overtime pay).
Further, relator contends that the commission could not apply the "special circumstances" provision of R.C. 4123.61.
 {¶ 41} In the present case, the commission utilized the only evidence that was before them which was claimant's W2 form for 1999. Relator has not shown that it has been prejudiced by the commission's utilization of this information in calculating claimant's FWW. In reviewing Resolution No. R80-7-48(a), the commission could have utilized overtime pay earned by claimant during the six-week period prior to the onset of his disability. In that case, the FWW may have been set higher than the commission actually set it. Inasmuch as the commission is to set the FWW at either the higher of the gross wages, including overtime, earned in the prior six weeks, or the gross wages earned for the seven days prior to the onset of disability, excluding overtime pay, relator has not shown that the commission abused its discretion in taking the annual wages and dividing them by 52 to determine a seven-day period from which to calculate the FWW. Relator is correct to argue that the "special circumstances" provision of R.C. 4123.61 only applies when calculating AWW, the commission is not without some discretion. However, inasmuch as R.C. 4123.61 does not specify the manner in which the commission is to determine the FWW, the commission has some discretion in determining this amount. Here, the commission did not abuse its discretion.
 {¶ 42} Inasmuch as this magistrate finds that relator has not demonstrated that the commission abused its discretion in utilizing the special circumstances provision of R.C. 4123.61 in setting claimant's AWW, and likewise has not abused its discretion in setting claimant's FWW, it is this magistrate's decision that this court should deny relator's request for a writ of mandamus.
 /s/ Stephanie Bisca Brooks 
STEPHANIE BISCA BROOKS MAGISTRATE