{¶ 1} In this original action, relator, FedEx Ground Package System, Inc. ("FedEx Ground" or "relator"), requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order setting the average weekly wage ("AWW") and the full weekly wage ("FWW") of respondent Christopher J. Roper ("claimant") at $417.05 and $457.36 respectively, and to enter an order setting AWW and FWW without regard to the wages claimant earned in concurrent dissimilar employment during the year prior to the date of injury.
 Findings of Fact: {¶ 2} 1. In December 2004, claimant began working at FedEx Ground as a package handler. He worked part-time on an average of 20 to 25 hours per week. The job required him to remove packages from a conveyor belt and then load them into the proper trailer. The packages weighed anywhere from two to 180 pounds.
 {¶ 3} 2. In April 2006, claimant began concurrent employment at Integrated Pest Control ("Integrated") as a wildlife-control operator. This job required claimant to spray floors and baseboards. Prior to his employment at Integrated, claimant was self-employed as a wildlife-control operator. Claimant's federal tax return for the year 2006 shows that he operated his business at a loss.
 {¶ 4} 3. On October 24, 2006, claimant sustained an industrial injury while employed as a part-time package handler for FedEx Ground. Relator, a self-insured employer under Ohio's workers' compensation laws, certified the industrial claim for "lumbar strain/sprain; L4-5 disc protrusion."
 {¶ 5} 4. FedEx Ground calculated the AWW by dividing claimant's total earnings at FedEx Ground during the year prior to the date of injury by 52 weeks. A FedEx Ground computation sheet shows that claimant earned $8,343.55 at FedEx Ground during the year prior to the date of injury. Thus, relator set the AWW at $160.45 ($8,343.55 divided by 52 equals $160.45).
 {¶ 6} 5. Claimant earned $250.80 at FedEx Ground during the week prior to the date of injury. Relator used this figure for the FWW because claimant's total earnings for the six-week period prior to the injury date divided by six produced *Page 161 
a figure less than the $250.80 claimant earned during the one week prior to the date of injury.
 {¶ 7} 6. Following the industrial injury, relator was able to accommodate claimant's medical restrictions for a while. However, effective January 24, 2007, relator began paying claimant temporary total disability ("TTD") compensation because it could no longer accommodate the restrictions.
 {¶ 8} 7. Claimant earned approximately $13,220.88 from Integrated during the year prior to the date of injury.
 {¶ 9} 8. On April 11, 2007, claimant moved that his AWW and FWW be reset by the commission.
 {¶ 10} 9. Following a May 15, 2007 hearing, a district hearing officer ("DHO") issued an order granting claimant's motion and resetting AWW and FWW respectively at $417.05 and $457.36. The DHO's order explains:
 The Full Weekly Wage (FWW) is SET at $457.36 based upon $2,744.20 divided by 6 weeks.
 The Average Weekly Wage (AWW) is SET at $417.05 based upon $21,686.43 divided by 52 weeks.
 The Industrial Commission invokes special circumstances in order to do substantial justice to the injured worker. Injured worker was working at 2 different jobs during the year prior to injury and also had his own business. The business did not generate any net income; therefore, no figures from the self-employment are considered. The wages from both the instant employer and the other employer are added together to do substantial justice. The employer's argument that the case of Lipsky vs. Patricia [Patrick] Barry [(Dec. 11, 1990), Franklin App. No. 90AP-07, 1990 WL 204741] demands that only wages from similar occupations be added together is found not well taken. In the case Village of Huntsville vs. Indus. Comm.
[Franklin App. No. 04AP-281, 2004-Ohio-6615, 2004 WL 2829029], wages from dissimilar occupations were added together for both FWW and AWW calculations in order to do — substantial justice.
 {¶ 11} 10. Relator administratively appealed the DHO's order of May 5, 2007.
 {¶ 12} 11. Following a June 29, 2007 hearing, a staff hearing officer ("SHO") issued an order stating that the DHO's order is modified. The SHO's order explains:
 The order of the District Hearing Officer, from the hearing dated 5/15/07 is MODIFIED to the following extent. Therefore the injured worker's request contained on a C-86 motion, dated 4/11/07, to reset the Average Weekly Wage (AWW) and Full Weekly Wage (FWW) rate is GRANTED. *Page 162 
 The Hearing Officer finds special circumstances to warrant the recalculation of the AWW and the FWW settings.
 Specifically, the Hearing Officer finds special circumstances in that during the period of the year prior to injured worker's injury in this claim, he was employed, part-time, for the instant employer, and was also employed, part-time, with a company named Integrated [P]est Control. He also was operating his own business, Affordable Animal Removal, at a loss during that time frame.
 The Hearing Officer finds that in order to do substantial justice to injured worker, the wage from both part-time employers must be utilized in calculating the FWW and AWW settings. The Hearing Officer also finds that utilizing the wages from both employers would not provide the injured worker with a windfall. Therefore, both requirements of State ex rel Wireman [Firestone Tire Rubber Co.] vs. Indus. Comm. (1990) 49 Ohio St.3d 283
[551 N.E.2d 979] have been met. The Hearing Officer notes that a regular work week of less than 40 hours may be considered a special circumstance which has required a different calculation.
 Therefore, the Hearing Officer orders the the [sic] FWW rate be SET at $457.36 based upon $2,744.20 divided by 6 weeks.
 The AWW rate is SET at $417.05 based upon $21,686.43 divided by 52 weeks. The figure of $21,686.43 is utilized by adding the wages for the year prior from Fedex and Integrated [P]est Control. No wages are utilized from the Affordable Animal Removal company as injured worker did operate that company at a loss in the year prior to his injury.
 Therefore, the Hearing Officer finds that the resetting of the AWW and FWW rates will provide injured worker with substantial justice as required by O.R.C. 4123.61 and the previously paid compensation is ordered adjusted accordingly.
 This finding is based upon the wage information submitted to the file, and injured worker's testimony at hearing.
 {¶ 13} 12. On July 27, 2007, another SHO refused relator's administrative appeal from the SHO's order of June 29, 2007.
 {¶ 14} 13. On September 22, 2007, the three-member commission mailed an order denying relator's request for reconsideration.
 {¶ 15} 14. On November 19, 2007, relator, FedEx Ground Package System, Inc., filed this mandamus action. *Page 163 
 Conclusions of Law: {¶ 16} It is the magistrate's decision that this court deny relator's request for a writ of mandamus, as more fully explained below.
 {¶ 17} R.C. 4123.61 currently states:
 The average weekly wage of an injured employee at the time of the injury or at the time disability due to the occupational disease begins is the basis upon which to compute benefits.
 In cases of temporary total disability the compensation for the first twelve weeks for which compensation is payable shall be based on the full weekly wage of the claimant at the time of the injury or at the time of the disability due to occupational disease begins. * * *
 Compensation for all further temporary total disability shall be based as provided for permanent disability claims.
 In death, permanent total disability claims, permanent partial disability claims, and impairment of earnings claims, the claimant's or the decedent's average weekly wage for the year preceding the injury or the date the disability due to the occupational disease begins is the weekly wage upon which compensation shall be based. In ascertaining the average weekly wage for the year previous to the injury, or the date the disability due to the occupational disease begins any period of unemployment due to sickness, industrial depression, strike, lockout, or other cause beyond the employee's control shall be eliminated.
 In cases where there are special circumstances under which the average weekly wage cannot justly be determined by applying this section, the administrator of workers' compensation, in determining the average weekly wage in such cases, shall use such method as will enable the administrator to do substantial justice to the claimants. * * *
 {¶ 18} In State ex rel. Smith v. Indus. Comm.
(1933), 127 Ohio St. 217, 220, 187 N.E. 768, the Supreme Court of Ohio had occasion to interpret and apply the phrase "average weekly wages" as it appeared in G.C. 1465-79. According to theSmith court, the statute read:
 In case of temporary disability, the employee shall receive sixty-six and two-thirds per cent, of his average weekly wages so long as such disability is total.
 {¶ 19} The Smith court also noted that G.C. 1465-84 read as follows: *Page 164 
 The average weekly wage of the injured person at the time of the injury shall be taken as the basis upon which to compute the benefits.
Id.
 {¶ 20} In Smith, while employed as volunteer firemen, the relators were seriously injured while en route to a fire. The relators were also concurrently employed as a baker and restaurant worker, respectively. The Smith court observed that it cannot seriously be contended that employment as a baker or restaurant worker is in any way related to employment as a volunteer fireman.
 {¶ 21} As the Smith court put it, does the phrase "average weekly wages" mean the amount received by the relators as firemen, or does it include the amount received as firemen and also the amount accruing from regular occupations?
 {¶ 22} The Smith court recognized that the question to be decided was new in Ohio. It noted that courts of other jurisdictions had held that where an employee engaged in similar work for two or more employers at the time of an injury, his compensation should be based on the amount that he usually earned in the particular kind of employment rather than on the amount he had been receiving from the particular employer in whose service he was engaged at the time of injury. Thus, the Smith court recognized the existence of a so-called similar-employment doctrine held by other state jurisdictions in AWW cases.
 {¶ 23} The Smith court explained its interpretation of the phrase "average weekly wages":
 While it has always been the policy of this court to construe liberally the provisions of the Workmen's Compensation Act in favor of injured employees and their dependents, we should have to resort to a dubious and forced construction of our statutes to hold that the phrase "average weekly wages" as used therein was intended to cover both the earnings of an employee in the particular work he was performing when injured and the remuneration received in a distinct and separate employment, in which he was generally engaged, and which was not connected in any way with the employment in which the injury was suffered.
Id. at 221, 187 N.E. 768.
 {¶ 24} The Smith court held:
 We hold, upon the facts in these cases, that the relators are not entitled to awards by the Industrial Commission, as respondent, on a basis including their earnings as a baker and restaurant worker, respectively.
Id.
 {¶ 25} The Smith court's syllabus reads: *Page 165 
 In determining workmen's compensation based upon the average weekly wage under sections 1465-79 and 1465-84, General Code, the Industrial Commission is limited to the average weekly wage received in the employment in which the injury occurred, where claimant was injured while serving as a member of a volunteer fire department, and was also generally engaged in another separate and distinct line of work.
 {¶ 26} In Lipsky v. Barry (Dec. 11, 1990), Franklin App. No. 90AP-07, 1990 WL 204741, this court had occasion to address the Smith case in a mandamus action brought by relator Ralph Lipsky, who was injured while tending bar at Lee's Cafe. The claim was allowed, and Lipsky was awarded TTD compensation. An Ohio Bureau of Workers' Compensation claims examiner set Lipsky's AWW at $100 based upon Lipsky's yearly income at Lee's Cafe divided by 52 weeks.
 {¶ 27} Lipsky moved for a recalculation of his AWW based upon his earnings from working two days a week at a second bar, Bill's Open Door. A commission hearing officer reset the AWW at $111.65, and the decision was administratively affirmed. The order contained no reference to the wages Lipsky allegedly earned at Bill's Open Door.
 {¶ 28} The Lipsky court noted that one issue before it was "whether wages received in employment concurrent with but separate from the employment in which the injury occurred are included when calculating the average weekly wage under R.C. 4123.61." Lipsky, 1990 WL 204741, *2.
 {¶ 29} In addressing the Smith case, theLipsky court noted that R.C. 4123.61 (formerly G.C. 1465-84) was amended only four years after the Smith
decision was released. At that time, the legislature inserted the paragraph that directs the commission to calculate the AWW by any means that will enable it to do substantial justice to the claimant when special circumstances exist. TheLipsky court then noted that at least one commentator is of the opinion that the amendment was intended to correct the harsh impact of the Smith case.
 {¶ 30} Citing State ex rel. Wireman v. Indus.Comm. (1990), 49 Ohio St.3d 286, 551 N.E.2d 1265, theLipsky court, at *3, noted that "[m]ore recent case law" emphasizes that the AWW must do substantial justice to the claimant, while avoiding a windfall. The court also noted that; in Wireman, special circumstances had been found where the claimant had worked part-time rather than a full-time work week.
 {¶ 31} The Lipsky court reasoned:
 We conclude that R.C. 4123.61 requires the commission when calculating the average weekly wage to consider all wages earned in concurrent employments, at least if they are similar to the employment in which the claimant is injured. This conclusion follows both from the language of R.C. 4123.61 and the Smith *Page 166 
 case, which recognized the similar employment doctrine. R.C. 4123.61 directs the commission to do substantial justice when calculating the average weekly wage considering special circumstances. Special or unusual circumstances have been found where the claimant works a part-time rather than a fulltime work week. Wireman, supra, at 289, 551 N.E.2d 1265.
 In this case, relator is apparently employed part-time by both Lee's Cafe and Bill's Open Door. This is a special or unusual circumstance which the commission is directed to consider under R.C. 4123.61. This is also consistent with the holding in Wireman
that the average weekly wage calculation must do substantial justice while avoiding a windfall. A windfall will not result concerning similar employment as the claimant will most probably be disabled from both jobs. In any case, if the claimant is capable of performing a job similar to that in which he was injured, this fact would support the termination of temporary total benefits altogether. Aggregating concurrent employments creates no more windfall for the claimant, nor burden on the employer, than using an average of the past years wages as is directed by R.C. 4123.61.
 Moreover, the Supreme Court recognized but distinguished the similar employments doctrine in Smith, supra. Given this fact and the subsequent amendment of R.C. 4123.61, the statute at least requires the commission to consider wages earned in employment similar to that in which the claimant was injured. As there is no indication that the commission considered the evidence of relator's employment at Bill's Open Door, an abuse of discretion results and further consideration is warranted.
 Lipsky, 1990 WL 204741, *3-4.
 {¶ 32} Several observations are in order regarding theSmith and Lipsky cases. First, theSmith decision, 127 Ohio St. 217, 187 N.E. 768, rested on interpretation of the meaning of the phrase "average weekly wages." Second, the special circumstances provision of R.C. 4123.61 was not in existence at the time of the Smith
decision. Third, while acknowledging the Smith case, the Lipsky court found special circumstances when concurrent similar employments exist. Fourth, theLipsky court was careful not to adopt theSmith doctrine regarding similar employments. In that regard, the Lipsky court concluded that R.C. 4123.61
requires the commission to consider all wages earned in concurrent employments, at least if they are similar to the employment in which the claimant is injured.
 {¶ 33} In the magistrate's view, given the above analysis, neither Smith nor Lipsky prohibit the commission's decision rendered here. *Page 167 
 {¶ 34} As this court held in Lipsky,1990 WL 204741, concurrent employment can produce the special circumstances under R.C. 4123.61 that permit the commission to include wages from both employments in calculating AWW.
 {¶ 35} Given Lipsky's holding, the issue here is whether the commission abused its discretion in determining that special circumstances require inclusion of wages from FedEx Ground and Integrated in the AWW calculation.
 {¶ 36} The phrase "special circumstances" is not defined by the statute, but special circumstances have generally been confined to uncommon situations. Wireman,49 Ohio St.3d at 288, 551 N.E.2d 1265. Moreover, special circumstances can be invoked only if the standard calculation yields a result that is substantially unjust. State ex rel. Cawthorn v.Indus. Comm. (1997), 78 Ohio St.3d 112, 115,676 N.E.2d 886; State ex rel. Clark v. Indus. Comm. (1994),69 Ohio St.3d 563, 566, 634 N.E.2d 1014.
 {¶ 37} AWW is designed to find a fair basis for award offuture compensation. State ex rel. Riley v. Indus.Comm. (1983), 9 Ohio App.3d 71, 73, 458 N.E.2d 428. The AWW should approximate the average amount that the claimant would have received had he continued working after the injury as he had before the injury. State ex rel. Erkard v. Indus.Comm. (1988), 55 Ohio App.3d 186, 188, 563 N.E.2d 310.
 {¶ 38} In calculating AWW, two considerations dominate. First, the AWW must do substantial justice to the claimant. Second, it should not provide a windfall. Wireman,49 Ohio St.3d at 287, 551 N.E.2d 1265.
 {¶ 39} The SHO's order of June 29, 2007, indicates that the standard calculation yields a result that is substantially unjust. As the SHO explained, claimant was employed part time at two different jobs.
 {¶ 40} If the industrial injury removes claimant from both jobs, an AWW based exclusively upon the wages earned at the job of injury produces a result that is substantially unjust, because it does not proximate the average amount that claimant would have received had he continued working at both jobs after the injury, as he had before the injury. Significantly, under Ohio law, if an injured worker cannot return to his former position of employment, but continues to work at another job, he is not entitled to TTD compensation. State ex rel.Johnson v. Rawac Plating Co. (1991), 61 Ohio St.3d 599,575 N.E.2d 837. Therefore, an injured worker who is not disabled by the industrial injury from his other job will not obtain a windfall if AWW is based upon earnings from concurrent employment.
 {¶ 41} Thus, as the SHO's order of June 29, 2007 found, theWireman standard for special circumstances is met. *Page 168 
 {¶ 42} Accordingly, for all the above reasons, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.