DECISION
{¶ 1} Relator, Tonya Taylor, seeks a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order establishing her full weekly wage ("FWW") as $270.96, and directing the commission to establish relator's FWW as $624.
 {¶ 2} Pursuant to former Loc. Rule 12(M) of the Tenth District Court of Appeals,[1] this court appointed a magistrate without limitation of powers specified in former Civ.R. 53(C)[2] to consider relator's cause of action. The magistrate examined the evidence and issued a decision, wherein she made findings of fact and conclusions of law. (Attached as Appendix A.) In her decision, the magistrate recommended denial of relator's request for a writ of mandamus. Relator has filed objections to the magistrate's decision. See, generally, Civ.R. 53(D)(3)(b).
 {¶ 3} In her objections, relator does not challenge the magistrate's findings of fact. See, generally, Civ.R. 53(D)(3)(b)(iv) (providing that, except for a claim of plain error, unless a party objects to a magistrate's factual finding or legal conclusion, a party's claim of error as to a magistrate's factual finding or legal conclusion is waived on appeal).
 {¶ 4} Rather, in her objections relator challenges the magistrate's conclusion that former R.C. 4123.61[3]
permitted the commission to establish relator's FWW based upon an average of earnings for six weeks prior to relator's date of injury. According to relator, under former R.C. 4123.61, when determining relator's FWW, the commission should have looked to relator's earnings at the time that she was injured and then determine relator's FWW based on relator's full wage for the week in which she was injured.
 {¶ 5} To be entitled to a writ of mandamus, relator must show (1) a clear legal right to the relief requested; (2) respondent is under a clear legal duty to perform the act sought; and (3) relator has no plain and adequate remedy at law. State ex rel.Fain v. Summit Cty. Adult Probation Dept. (1995),71 Ohio St.3d 658, citing State ex. Howard v. Ferreri (1994),70 Ohio St.3d 587, 589.
 {¶ 6} "In matters involving the Industrial Commission, the determinative question is whether relator has a clear legal right to relief. Such a right is established where it is shown that the commission abused its discretion by entering an order which is not supported by any evidence in the record." State ex rel.Valley Pontiac Co., Inc. v. Indus. Comm. (1991),71 Ohio App.3d 388, 391, citing State ex rel Elliott v. Indus. Comm. (1986),26 Ohio St.3d 76. However, "where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is inappropriate." State exrel. Valley Pontiac Co., Inc., at 391, citing State ex rel.Lewis v. Diamond Foundry Co. (1987), 29 Ohio St.3d 56.
 {¶ 7} The issue here therefore resolves to whether the magistrate erred when she concluded that the commission's order did not constitute an abuse of discretion and was in accordance with law.
 {¶ 8} Former R.C. 4123.61 provided, in part:
The average weekly wage of an injured employee at the time of the injury or at the time disability due to the occupational disease begins is the basis upon which to compute benefits.
In cases of temporary total disability the compensation for the first twelve weeks for which compensation is payable shall be based on the full weekly wage of the claimant at the time of the injury or at the time disability due to occupational disease begins; when a factory, mine, or other place of employment is working short time in order to divide work among the employees, the bureau of workers' compensation shall take that fact into consideration when determining the wage for the first twelve weeks of temporary total disability.
See, also, former R.C. 4123.56[4] (temporary disability compensation).
 {¶ 9} Although former R.C. 4123.61 employs the term "full weekly wage," this term is undefined in R.C. Chapter 4123. See, generally, R.C. 4123.01 (definitions). Absent statutory definition of the term "full weekly wage," the meaning of this term as used in former R.C. 4123.61 may be subject to different reasonable interpretations, thus creating possible ambiguity. See, generally, Family Medicine Found., Inc. v. Bright,96 Ohio St.3d 183, 2002-Ohio-4034, at ¶ 8, citing State v. Jordan
(2000), 89 Ohio St.3d 488, 492 (stating that "[i]t is firmly established that a statute is ambiguous when its language is subject to more than one reasonable interpretation").
 {¶ 10} However, "where an ambiguous statute is subject to an administrative history of interpretation, this court may defer to the administrative construction of the statute, unless the interpretation is clearly in error."In re Aultman Hosp. (1992),80 Ohio App.3d 134, 139. See, also, R.C. 1.49(F).
 {¶ 11} Because confusion and uncertainty arose concerning the computation of FWW under R.C. 4123.61, in June 1980, the commission and the Bureau of Workers' Compensation ("BWC") issued a joint resolution to address this confusion and uncertainty. In joint resolution No. R80-7-48, effective July 1, 1980, the commission and the BWC stated:
WHEREAS confusion and uncertainty has arisen regarding the computation of the full weekly wage of injured employees under Ohio Revised Code section 4123.61, and
WHEREAS the Industrial Commission and bureau of Workers' Compensation seek to achieve uniformity of treatment between state-fund and self-insuring employers;
THEREFORE BE IT RESOLVED, that the full weekly wage shall be computed in the following manner:
For employees who have been either continuously employed for six weeks prior to the date of injury or who have worked for at least seven days prior to the date of injury, the full weekly wage shall be the higher amount of either:
a) the gross wages (including overtime pay) earned over the aforementioned six week period divided by six, or
b) the employee's gross wages earned for the seven days prior to the date of injury (excluding overtime pay).
For employees who have not been continuously employed for six weeks prior to the date of injury and who have not worked for at least seven days prior to the date of injury, the full weekly wage shall be computed by multiplying the employees' hourly rate times the number of hours he was scheduled to work for the week in which the injury occurred.
 {¶ 12} Relator contends, however, that since the commission and BWC issued this joint resolution, the commission has rescinded Joint Resolution No. R80-7-48 and, therefore, the commission properly could not have relied upon this joint resolution when it determined relator's FWW. Notwithstanding relator's claim, according to the evidence in the record, the commission did not rescind this joint resolution. Rather, the commission indicated that Joint Resolution No. R80-7-48 was superseded by (1993) Am.Sub.H.B. No. 107, 145 Ohio Laws, Part II, 2990, effective October 20, 1993.
 {¶ 13} Prior to (1993) Am.Sub.H.B. No. 107, the second paragraph of former R.C. 4123.61 provided, in part, that "the industrial commission" should take into consideration whether a factory, mine, or other place of employment is working short time when determining a claimant's wage for the first 12 weeks of temporary total disability compensation. However, (1993) Am.Sub.H.B. No. 107 substituted "bureau of workers' compensation" for "industrial commission" in this second paragraph of former R.C. 4123.61. Additionally, among other changes to R.C. 4123.61, (1993) Am.Sub.H.B. No. 107 substituted "administrator of workers' compensation" for "commission" in the final paragraph of former R.C. 4123.61.
 {¶ 14} Thus, in former R.C. 4123.61, as amended by (1993) Am.Sub.H.B. No. 107, the agency responsible for determining FWW was changed, and consequently, as applied to the commission, Joint Resolution No. R80-7-48 was superseded to a limited extent. However, we find nothing in (1993) Am.Sub.H.B. No. 107 that abrogates the computation of FWW as contained in Joint Resolution No. R80-7-48. We also cannot conclude that the commission's recognition that Joint Resolution No. R80-7-48 was superseded to a limited extent, as applied to the commission, altered the formula for determining FWW. Furthermore, the commission's recognition that the joint resolution was superseded to a limited extent did not necessarily prohibit the commission from relying, in part, upon Joint Resolution No. R80-7-48 when it exercised its discretion in determining relator's FWW. See State ex rel.Huntsville v. Indus. Comm., Franklin App. No. 04AP-281,2004-Ohio-6615, at ¶ 41 (stating that "inasmuch as R.C. 4123.61
does not specify the manner in which the commission is to determine FWW, the commission has some discretion in determining this amount"); id. at ¶ 17.
 {¶ 15} Assuming Joint Resolution No. R80-7-48 applies, relator further objects to the magistrate's application of this joint resolution and the magistrate's distinction between "employed" and "worked" in her conclusions of law. In her decision, the magistrate stated, in part:
[Under Joint Resolution No. R80-7-48], there are two situations contemplated: (1) where the employee has either been continuously employed for six weeks prior to the injury or
worked at least seven days prior to the injury; and (2) where the employee has not been continuously employed for six weeks prior to the injury and has not worked seven days prior to the injury. In the present case, relator had been employed by the employer since 1995. As such, although she has not actually worked (for personal reasons) for several weeks prior to her injury, she had been continuously employed for more than six weeks prior to her injury. As such, the first situation applies and the FWW is to be set at the higher of the two enumerated calculations. Applied to the present claim, because relator had not worked in the week prior to her date of injury, the wages for the six weeks prior to the date of injury, divided by six, is the appropriate formula which was applied by the commission in this case.
(Magistrate's Decision, Appendix A at ¶ 34; emphasis sic.)
 {¶ 16} Relator asserts that it is unreasonable and unfair to differentiate between a claimant that is "employed" and one who is "working," and instead, the terms "employed" and "working" should be considered synonymous. We disagree. We find that the magistrate's distinction is reasonable, and the magistrate's legal conclusion is not inconsistent with the plain language of Joint Resolution No. R80-7-48 or former R.C. 4123.61. See, e.g.,State v. Darling (2000), 139 Ohio App.3d 610, 615 (observing that, when interpreting a statute, a court must consider words and phrases in context according to rules of grammar and common usage, and a court must neither delete words that are used nor add words that are not used).
 {¶ 17} Based upon our independent review, and having previously acknowledged that relator has not objected to the magistrate's factual findings, we conclude that the magistrate properly discerned the pertinent facts and further conclude that the magistrate properly applied the relevant law to those facts when she recommended denial of relator's request for a writ of mandamus. Furthermore, as amplified here, we adopt the magistrate's decision as our own, including the magistrate's findings of fact and conclusions of law. Accordingly, we overrule relator's objections to the magistrate's decision and deny relator's request for a writ of mandamus.
Objections overruled; writ denied.
FRENCH and McGRATH, JJ., concur.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State of Ohio ex rel. Tonya Taylor, :
Relator, :
v. : No. 05AP-803
Industrial Commission of Ohio : and Whirlpool Corporation, :
Respondents. :
 MAGISTRATE'S DECISION Rendered on January 31, 2006 Chester T. Freeman Co., L.P.A., and Chester T. Freeman, for relator.
Jim Petro, Attorney General, and Gerald H. Waterman, for respondent Industrial Commission of Ohio.
Bricker Maxfield, LLC, and Michael L. Maxfield, for respondent Whirlpool Corporation.
 IN MANDAMUS {¶ 18} Relator, Tonya Taylor, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order setting her full weekly wage ("FWW") at $270.96, and requesting that the commission be ordered to find that she is entitled to have her FWW set at $624.
Findings of Fact:
 {¶ 19} 1. Relator sustained a work-related injury on November 17, 2003, and was accepted by Whirlpool Corporation, a self-insured employer, for various conditions involving relator's right ankle and foot. Specifically, relator's claim has been allowed for "FX right ankle; sprain of right ankle; tenosynovitis, right; crushing injury right foot."
 {¶ 20} 2. The record indicates that November 17, 2003, the date of relator's injury was also the first day that relator had returned to work following an absence. Relator had been off work for non-work-related medical problems prior to November 17, 2003, and had not worked for the seven days preceding her injury.
 {¶ 21} 3. The self-insuring employer calculated relator's FWW and determined that her FWW should be set at $270.96 and disability compensation for the first 12 weeks of total disability was paid at that rate using that calculation.
 {¶ 22} 4. On April 16, 2004, relator filed a motion requesting that her FWW be adjusted to $624 per week and that the previously awarded temporary total disability ("TTD") compensation paid to her be readjusted to reflect the increased amount.
 {¶ 23} 5. Relator's motion was heard before a district hearing officer ("DHO") on June 10, 2004. The DHO granted relator's motion as follows:
It is the order of the District Hearing Officer that the full weekly wage be set at $691.84. Due to the fact that the injured worker's wages for the seven days as well as the six weeks prior to the date of injury are incomplete and inconsistent, the District Hearing Officer finds that it is most appropriate to utilize the average weekly wage of $691.84 as the figure for the full weekly wage.
In the six weeks prior to the date of injury of 11/17/2003, the injured worker did not receive earnings for three of those six weeks. Furthermore, there is no evidence indicating that the injured worker worked the full seven days prior to the date of injury. The injured worker missed these periods of time due to non-industrial medical leave. Both parties discussed the previous Industrial Commission Resolution dated 6/04/1980 addressing the full weekly wage. This joint Industrial Commission/BWC Resolution was later rescinded and never re-issued by the Industrial Commission. Currently, the BWC seems to utilize the elements that are outlined in that previous BWC/IC joint resolution. Due to the nature of the wage evidence in this situation, however, the District Hearing Officer finds that it is most equitable to utilize the average weekly wage for the purposes of setting the full weekly wage in this claim. A review of the wage information does point to the injured worker's consistent work history in the year prior to the date of injury.
For these reasons, the District Hearing Officer finds that the full weekly wage be set at $691.84. The District Hearing Officer has reviewed and considered all relevant evidence prior to rendering this decision. This order is based on the wage evidence in file.
 {¶ 24} 6. The employer appealed and the matter was heard before a staff hearing officer ("SHO") on August 12, 2004. The SHO vacated the prior DHO order and determined that relator's FWW should be set at $270.96 as follows:
The Staff Hearing Officer agrees with the employer's argument at hearing that there is a lack of legal authority to set the full weekly wage at the same figure as the average weekly wage, which is $691.84. The Staff Hearing Officer finds that the claimant was continuously employed in the 6 weeks prior to injury, however did not earn wages for the entire 6 weeks as she was off for non-industrial medical leave. However, there is no provision in ORC 4123.61 which allows for "special circumstances" to be applied in the determination of the full weekly wage. The special circumstances provision of 4123.61 and the provision that the method should do "substantial justice" to the claimant, applies only to the setting of the average weekly wage in a claim, and is not applicable to the setting of the full weekly wage. ORC 4123.61 indicates that the only circumstances taken into account when the full weekly wage is set, is the circumstance of a factory, mine, or other place of employment working short time in order to divide work among the employees. That is not the case in the instant claim. Totalling [sic] the claimant's wages in the 6 weeks prior to the date of injury yields a figure of $1625.78. Dividing this figure by the 6 weeks of employment yields a full weekly wage of $270.96. Again, while the claimant did not have earnings in 3 of the 6 weeks prior to injury, and while this could be considered a "special circumstance," the special circumstance provision of 4123.61 is applicable only to the average weekly wage, and cannot be used by the Staff Hearing Officer in setting the full weekly wage in this claim.
The Staff Hearing Officer has reviewed and considered all the evidence in file prior to rendering this decision. The Staff Hearing Officer relies on the wage information on file as provided by the self-insured employer, and on 4123.61, in rendering this decision.
(Emphasis sic.)
 {¶ 25} 7. Relator's appeal was refused by order of the commission mailed September 2, 2004.
 {¶ 26} 8. Relator's request for reconsideration was denied by order of the commission mailed October 8, 2004.
 {¶ 27} 9. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law:
 {¶ 28} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show that she has a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v. Indus. Comm. (1967),11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State ex rel. Elliott v. Indus. Comm. (1986),26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State exrel. Lewis v. Diamond Foundry Co. (1987), 29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v. Indus. Comm. (1981),68 Ohio St.2d 165.
 {¶ 29} In this mandamus action, relator argues that R.C.4123.61 requires that her FWW be established based upon her anticipated wages for the week following her injury. R.C. 4123.61
provides, in relevant part, as follows:
The average weekly wage of an injured employee at the time of the injury or at the time disability due to the occupational disease begins is the basis upon which to compute benefits.
In cases of temporary total disability the compensation for the first twelve weeks for which compensation is payable shall be based on the full weekly wage of the claimant at the time of the injury or at the time disability due to occupational disease begins; when a factory, mine, or other place of employment is working short time in order to divide work among the employees, the bureau of workers' compensation shall take that fact into consideration when determining the wage for the first twelve weeks of temporary total disability.
Compensation for all further temporary total disability shall be based as provided for permanent disability claims.
 {¶ 30} As above indicated, R.C. 4123.61 does not define "full weekly wage." Instead, the statute simply provides that TTD compensation for the first 12 weeks shall be based on the claimant's FWW at the time of injury or at the time of the disability due to the occupational disease begins. Further, the statute provides that, the Ohio Bureau of Workers' Compensation ("BWC") shall take into consideration when determining the FWW whether "a factory, mine, or other place of employment is working short time in order to divide work among the employees." Because FWW is not specifically defined in either the Ohio Revised Code or Ohio Administrative Code, the BWC and the commission, as the administrative bodies charged with such responsibilities, were left with establishing a formula to determine FWW.
 {¶ 31} With this in mind, the BWC established a joint resolution on June 4, 1980 to address the calculation of the FWW as follows:
WHEREAS confusion and uncertainty has arisen regarding the computation of the full weekly wage of injured employees under Ohio Revised code section 4123.61, and
WHEREAS the Industrial Commission and bureau of Workers' Compensation seek to achieve uniformity of treatment between state-fund and self-insuring employers;
THEREFORE BE IT RESOLVED, that the full weekly wage shall be computed in the following manner:
For employees who have been either continuously employed for six weeks prior to the date of injury or who have worked for at least seven days prior to the date of injury, the full weekly wage shall be the higher amount of either:
a) the gross wages (including overtime pay) earned over the aforementioned six week period divided by six, or
b) the employee's gross wages earned for the seven days prior to the date of injury (excluding overtime pay).
For employees who have not been continuously employed for six weeks prior to the date of injury and who have not worked for at least seven days prior to the date of injury, the full weekly wage shall be computed by multiplying the employees' hourly rate times the number of hours he was scheduled to work for the week in which the injury occurred.
(Emphasis sic.)
 {¶ 32} As above indicated, there are two situations contemplated: (1) where the employee has either been continuously employed for six weeks prior to the injury or
worked at least seven days prior to the injury; and (2) where the employee has not been continuously employed for six weeks prior to the injury and has not worked seven days prior to the injury. In the present case, relator had been employed by the employer since 1995. As such, although she had not actually worked (for personal reasons) for several weeks prior to her injury, she had been continuously employed for more than six weeks prior to her injury. As such, the first situation applies and the FWW is to be set at the higher of the two enumerated calculations. Applied to the present claim, because relator had not worked in the week prior to her date of injury, the wages for the six weeks prior to the date of injury, divided by six, is the appropriate formula which was applied by the commission in this case.
 {¶ 33} Relator's argument is premised upon relator's assertion that the above joint resolution has been rescinded. Relator points out that in a July 1999 document containing a Table of Rescinded Superseded Modified Resolutions, R80-7-48 was "Superseded by H.B. 107 effective October 20, 1993."
 {¶ 34} Under H.B. 107, responsibilities for the calculation of the AWW were transferred from the commission to the bureau. With the exception of substituting the bureau for the commission, new R.C. 4123.61 contains identical language to the former version. It is undisputed that the responsibility for adopting FWW guidelines now rests with the bureau and not the commission. However, to conclude that this change in the agency responsible for determining the FWW somehow changed the FWW determination from a discretionary one, and to say that R.C. 4123.61 now requires that the FWW be established as relator's anticipated wages for the week following her injury, is completely unsupported.
 {¶ 35} Based on the foregoing, the magistrate finds that relator has not demonstrated the commission abused its discretion by setting her FWW at $270.96 instead of calculating it in the manner relator suggests and relator's request for a writ of mandamus is denied.
[1] Effective May 1, 2006, the Local Rules of the Tenth District Court of Appeals were amended. See Loc.R. 19 of the Tenth District Court of Appeals.
[2] Civ.R. 53 was amended, effective July 1, 2006. Pursuant to Civ.R. 86(CC), the new amendments to Civ.R. 53 "govern all proceedings in actions brought after they take effect and also all further proceedings in actions then pending, except to the extent that their application in a particular action pending when the amendments take effect would not be feasible or would work injustice, in which event the former procedure applies."
[3] (2006) Am.Sub.S.B. No. 7 amended R.C. 4123.61, effective June 30, 2006.
[4] (2006) Am.Sub.S.B. No. 7 amended R.C. 4123.56, effective June 30, 2006.