The STATE of Ohio ex rel. FEDEX GROUND PACKAGE SYSTEM, INC.,

v.

INDUSTRIAL COMMISSION of Ohio et al.

[Cite as *State ex rel. FedEx Ground Package Sys., Inc. v. Indus. Comm.*, 182 Ohio App.3d 152, 2009-Ohio-1708.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 07AP–959.

Decided April 2, 2009.

Eastman & Smith Ltd., John T. Landwehr, Nicole A. Flynn and Mark A. Shaw, for relator.

Richard Cordray, Attorney General, and Gerald H. Waterman, Assistant Attorney General, for respondent Industrial Commission of Ohio.

Gallon, Takacs, Boissoneault & Schaffer Co., L.P.A., and Theodore A. Bowman, for respondent Christopher J. Roper.

McGRATH, Judge.

{¶ 1} Relator, FedEx Ground Package System, Inc. ("FedEx Ground"), commenced this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio to vacate its order setting the average weekly wage ("AWW") and the full weekly wage ("FWW") of respondent Christopher J. Roper ("claimant") at $417.05 and $457.36 respectively, and to enter an order setting the AWW and FWW without regard to the wages claimant earned in concurrent dissimilar employment during the year prior to the date of injury.

{¶ 2} This court referred the matter to a magistrate of this court, pursuant to Civ.R. 53 and Loc.R. 12(M) of the Tenth District Court of Appeals. The magistrate issued a decision, including findings of fact and conclusions of law, which is appended to this opinion. In his decision, the magistrate essentially concluded that the commission did not abuse its discretion in setting claimant's AWW and FWW at the amounts noted above. The magistrate therefore recommended that this court deny relator's request for a writ of mandamus. No party has filed objections to the magistrate's findings of fact, and we adopt them as our own. However, both relator and the commission object, albeit for different reasons, to the magistrate's conclusions of law. Thus, this matter is now before this court for a full, independent review.

{¶ 3} FedEx Ground's two objections to the magistrate's conclusions of law are as follows:

I. The Magistrate erred in concluding that the Ohio Supreme Court's interpretation of "average weekly wage[ ]" in *State ex rel. Smith v. Indus. Comm.* (1933), 127 Ohio St. 217 [187 N.E. 768] does not prohibit the aggregation of wages from dissimilar concurrent employment.

II. The Magistrate erred in finding that special circumstances warrant the adjustment of Roper's Average Weekly Wage and Full Weekly Wage.

{¶ 4} The commission's objection states:

The magistrate erred in not finding that the Industrial Commission's computations of the average weekly wage and the full weekly wage were in accordance with the standard formulae for these calculations, and did not require consideration of the special circumstances provision of R.C. 4123.61.

{¶ 5} Before analyzing these objections, we will briefly outline the facts of this case. In December 2004, claimant began working part-time for FedEx Ground as a package handler. This job required claimant to move packages from a conveyer belt to trailers. In April 2006, claimant began concurrent employment at Integrated Pest Control ("Integrated") as a wildlife-control operator. This job required claimant to spray floors and baseboards. In October 2006, claimant

sustained an injury arising out of and in the course of his part-time employment with FedEx Ground. An industrial claim was certified by FedEx Ground, which is a self-insured employer, for "lumbar strain/sprain; L4–5 disc protrusion." After FedEx Ground was unable to accommodate claimant's medical restrictions, it began paying temporary total disability ("TTD") compensation to claimant.

{¶ 6} In calculating claimant's AWW and FWW, FedEx Ground took into account only claimant's earnings at FedEx Ground. Claimant moved for a recalculation of his AWW and FWW by the commission. A district hearing officer ("DHO") issued an order resetting claimant's AWW and FWW in a manner that took into account claimant's wages from Integrated. The DHO reasoned that there were special circumstances that necessitated the recalculation. Relator appealed to a staff hearing officer ("SHO"), who issued an order that also reflected a finding of special circumstances and recalculated claimant's AWW and FWW in a manner that accounted for claimant's wages with FedEx Ground and Integrated. Another SHO refused FedEx Ground's administrative appeal, and the three-member commission subsequently mailed an order denying FedEx Ground's request for reconsideration. FedEx Ground then filed the mandamus action with this court.

{¶ 7} In analyzing FedEx Ground's request for a writ of mandamus, the magistrate, in his decision, set forth the statutory language of the current version of R.C. 4123.61, and reviewed case law addressing issues relating to AWW and concurrent employment, including the Supreme Court of Ohio's decision in *State ex rel. Smith v. Indus. Comm.* (1933), 127 Ohio St. 217, 187 N.E. 768, and this court's decision in *Lipsky v. Barry* (Dec. 11, 1990), Franklin App. No. 90AP–07, 1990 WL 204741. Upon analyzing the statutory and case law, the magistrate concluded that neither *Smith* nor *Lipsky* prohibited the commission's decision in this matter and essentially further resolved that the commission did not abuse its discretion in determining that "special circumstances," as that term is used in R.C. 4123.61, require inclusion of wages from FedEx Ground and Integrated in the AWW calculation.

{¶ 8} By its objections to the magistrate's decision, FedEx Ground argues that the magistrate erred in concluding that *Smith* does not prohibit the aggregation of wages from dissimilar concurrent employment for purposes of determining the appropriate AWW. FedEx Ground further argues that the magistrate erred in concluding that special circumstances warrant the adjustment of claimant's AWW and FWW.

{¶ 9} R.C. 4123.61 currently states:

The average weekly wage of an injured employee at the time of the injury * * * is the basis upon which to compute benefits.

In cases of temporary total disability the compensation for the first twelve weeks for which compensation is payable shall be based on the full weekly

wage of the claimant at the time of the injury or at the time of the disability due to occupational disease begins * * *.

Compensation for all further temporary total disability shall be based as provided for permanent disability claims.

In death, permanent total disability claims, permanent partial disability claims, and impairment of earnings claims, the claimant's or the decedent's average weekly wage for the year preceding the injury or the date the disability due to the occupational disease begins is the weekly wage upon which compensation shall be based. In ascertaining the average weekly wage for the year previous to the injury, or the date the disability due to the occupational disease begins any period of unemployment due to sickness, industrial depression, strike, lockout, or other cause beyond the employee's control shall be eliminated.

In cases where there are special circumstances under which the average weekly wage cannot justly be determined by applying this section, the administrator of workers' compensation, in determining the average weekly wage in such cases, shall use such method as will enable the administrator to do substantial justice to the claimants * * *.

{¶ 10} The *Smith* case, which was decided in 1933, involved volunteer firemen who were seriously injured while en route to a fire. The firemen were also concurrently employed as a baker and restaurant worker, respectively. The central issue before the *Smith* court was whether the phrase "average weekly wages," as used in G.C. 1465–84, the predecessor to R.C. 4123.61, "mean[s] the amount received by the relators as firemen, or does it include the amount received as firemen and also the amount accruing from their regular occupations?" *Smith*, 127 Ohio St. at 220, 187 N.E. 768. The *Smith* court, while recognizing its policy to liberally construe the provisions of the Workers' Compensation Act in favor of injured employees and their dependents, essentially resolved that it could not construe the phrase "average weekly wages" as used in the pertinent statute to include remuneration received from both employers. The *Smith* court held as follows: "We hold, upon the facts in these cases, that the relators are not entitled to awards by the Industrial Commission, as respondent, on a basis including their earnings as a baker and restaurant worker, respectively." Id. at 222, 187 N.E. 768. In other words, the *Smith* court "found that, under GC § 1965–84, the predecessor to R.C. 4123.61, the term 'average weekly wage' was not intended to include earnings received by the claimant in an occupation separate and distinct from the one in which he was injured." *Lipsky*, 1990 WL 204741, at *2, citing *Smith* at 222, 187 N.E. 768.

{¶ 11} When *Smith* was decided, G.C. 1465–84 provided, in its entirety, as follows: "The average weekly wage of the injured person at the time of the injury shall be taken as the basis upon which to compute the benefits." Since the *Smith*

decision, the General Assembly has significantly expanded upon this language. In addition to retaining the language from G.C. 1465–84, R.C. 4123.61 also provides that "claimant's * * * average weekly wage for the year preceding the injury * * * is the weekly wage upon which compensation shall be based." Furthermore, R.C. 4123.61 provides that "in cases where there are special circumstances under which the average weekly wage cannot justly be determined by applying this section, the administrator of workers' compensation, in determining the average weekly wage in such cases, shall use such method as will enable the administrator to do substantial justice to the claimants."

{¶ 12} Because the special-circumstances language in the applicable statute did not exist when *Smith* was decided, the *Smith* decision is not controlling as to the issue of whether the commission abused its discretion in finding that the special-circumstances provision in the statute required the inclusion of claimant's wages with FedEx Ground and Integrated in setting claimant's AWW and FWW. On this basis, we find that relator's first objection to the magistrate's decision is without merit.

{¶ 13} In both relator's second objection and in the commission's objection, the parties argue that the SHO abused its discretion in concluding that special circumstances warrant the adjustment of claimant's AWW and FWW. It appears from the SHO's decision that it found special circumstances to exist solely because claimant was employed at two part-time jobs. As correctly noted by relator, "part-time employment is not per se a 'special circumstance.'" *State ex rel. Logan v. Indus. Comm.* (1995), 72 Ohio St.3d 599, 601, 651 N.E.2d 1008 (noting that though part-time employment is not per se a special circumstance, in some part-time situations, special circumstances may indeed exist). Without more, the SHO's conclusory finding of special circumstances based only on the claimant's being employed at two part-time jobs does constitute an abuse of discretion. Therefore, to this extent, relator's second objection and the commission's objection are sustained.

{¶ 14} However, the commission goes on to argue that even though the SHO abused its discretion in finding special circumstances, issuing a writ is not necessary in this instance because the SHO was correct to use both employments, as this is what is contemplated in the standard formula set forth in R.C. 4123.61. We find the commission's position well taken.

{¶ 15} The "'standard formula for establishing [average weekly wage] is to divide claimant's earnings for the year preceding injury by fifty-two weeks.'" *State ex rel. McDulin v. Indus. Comm.* (2000), 89 Ohio St.3d 390, 391, 732 N.E.2d 367, quoting *State ex rel. Clark v. Indus. Comm.* (1994), 69 Ohio St.3d 563, 565, 634 N.E.2d 1014. Pursuant to R.C. 4123.61, when "special circumstances" render the traditional formula untenable, the commission may deviate

from the standard AWW formula. *McDulin* at 393, 732 N.E.2d 367. Although the phrase "special circumstances" is not defined by the statute, its application has been limited to uncommon situations. *State ex rel. Wireman v. Indus. Comm* (1990), 49 Ohio St.3d 286, 288, 551 N.E.2d 1265. Moreover, in calculating AWW, the following considerations dominate: the AWW must do substantial justice to the claimant, and it should not provide a windfall. Id. at 287, 551 N.E.2d 1265.

{¶ 16} In *Logan*, 72 Ohio St.3d 599, 651 N.E.2d 1008, the claimant was injured while in the course of and arising out of his employment. The commission derived claimant's AWW by dividing his total wages for the year prior to the injury by 52. The claimant argued that he was employed full-time for only 16 of the 52 weeks preceding his injury and that his weeks of unemployment and part-time employment be omitted from the calculation. The DHO excluded periods of the claimant's unemployment, but included amounts earned at this part-time employment. The claimant filed a mandamus action in this court, contending that his AWW was too low. This court rejected claimant's attempt to exclude the weeks of part-time employment. The Supreme Court of Ohio stated, "We also reject claimant's entreaty to exclude his weeks of part-time work. Part-time work is not listed among those situations that R.C. 4123.61 decreed must be excluded from the AWW computation. Elimination, therefore, can be accomplished only through the 'special circumstances' provision of R.C. 4123.61." *Logan* at 601, 651 N.E.2d 1008. Thus, in *Logan*, the court sanctioned the commission's inclusion of wages from concurrent employment to arrive at the claimant's AWW under the statute's standard formula.

{¶ 17} Additionally, in *State ex rel. Powell v. C.R. O'Neil & Co.*, 116 Ohio St.3d 22, 2007-Ohio-5504, 876 N.E.2d 520, the Supreme Court of Ohio granted a writ of mandamus to a claimant because the commission failed to include miscellaneous wages that the claimant had earned from concurrent self-employment and that were reflected on IRS 1099 forms. The court began its analysis of the AWW calculation issue by stating, "There is no dispute that evidence of Powell's self-employment income for the relevant periods * * * was not considered. There is also no dispute that the evidence is material, since R.C. 4123.61 bases the average weekly wage on earnings for the year prior to injury." Id. at ¶ 7. The court in *Powell* recognized that the standard formula for calculation of AWW includes all earnings for the year preceding the injury, whether or not they were earned in the job in which the claimant suffered the disabling injury or occupational disease.

{¶ 18} Given the foregoing, even though the commission abused its discretion in seemingly declaring part-time employment to be a special circumstance per se, because the AWW calculation is nonetheless in accordance with R.C. 4123.61, issuing a writ of mandamus is not warranted in this instance.

{¶ 19} Turning to the FWW, the magistrate erred in applying the special-circumstances provision to this calculation because the provision applies to the calculation of the FWW only when "there are special-circumstances under which the average weekly wage cannot justly be determined." Id. Because the AWW can be justly determined using the standard calculation, application of the special circumstances provision is misplaced. The General Assembly did not define FWW, but reserved to the commission the task of calculating it. To calculate the FWW in cases where no special circumstances exist, the commission may, in its discretion, use joint resolution No. R80–7–48, which it promulgated jointly with the Ohio Bureau of Workers' Compensation. *State ex rel. Taylor v. Indus. Comm.*, 10th App. No. 05AP–803, 2006-Ohio-4781, 2006 WL 2627557, ¶ 14; *State ex rel. Huntsville v. Indus. Comm.*, 10th App. No. 04AP–281, 2004-Ohio-6615, 2004 WL 2829029, ¶ 41. Having done so in this case, the commission did not abuse its discretion.

{¶ 20} In summary, relator's first objection is overruled, relator's second objection is sustained in part, and the commission's objection to the magistrate's decision is sustained. We adopt the magistrate's findings of fact, but reject the conclusions of law. Accordingly, we deny the requested writ of mandamus.

Objections sustained in part
and overruled in part;
writ denied.

SADLER and KLINE, JJ., concur.

KLINE, J., of the Fourth Appellate District, sitting by assignment.

## APPENDIX

IN THE COURT OF APPEALS OF OHIO
TENTH APPELLATE DISTRICT

The State of Ohio ex rel.
FedEx Ground Package System, Inc.,

v.

Industrial Commission of Ohio et al.

No. 07AP–959

(REGULAR CALENDAR)

MAGISTRATE'S DECISION

Rendered August 15, 2008

Eastman & Smith Ltd., John T. Landwehr, Nicole A. Flynn and Mark A. Shaw, for relator.

Nancy H. Rogers, Attorney General, and Gerald H. Waterman, Assistant Attorney General, for respondent Industrial Commission of Ohio.

Gallon, Takacs, Boissoneault & Schaffer Co. L.P.A., and Theodore A. Bowman, for respondent Christopher J. Roper.

## IN MANDAMUS

MACKE, Magistrate.

{¶ 21} In this original action, relator, FedEx Ground Package System, Inc. ("FedEx Ground" or "relator"), requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order setting the average weekly wage ("AWW") and the full weekly wage ("FWW") of respondent Christopher J. Roper ("claimant") at $417.05 and $457.36 respectively, and to enter an order setting AWW and FWW without regard to the wages claimant earned in concurrent dissimilar employment during the year prior to the date of injury.

## Findings of Fact:

{¶ 22} 1. In December 2004, claimant began working at FedEx Ground as a package handler. He worked part-time on an average of 20 to 25 hours per week. The job required him to remove packages from a conveyor belt and then load them into the proper trailer. The packages weighed anywhere from two to 180 pounds.

{¶ 23} 2. In April 2006, claimant began concurrent employment at Integrated Pest Control ("Integrated") as a wildlife-control operator. This job required claimant to spray floors and baseboards. Prior to his employment at Integrated, claimant was self-employed as a wildlife-control operator. Claimant's federal tax return for the year 2006 shows that he operated his business at a loss.

{¶ 24} 3. On October 24, 2006, claimant sustained an industrial injury while employed as a part-time package handler for FedEx Ground. Relator, a self-insured employer under Ohio's workers' compensation laws, certified the industrial claim for "lumbar strain/sprain; L4–5 disc protrusion."

{¶ 25} 4. FedEx Ground calculated the AWW by dividing claimant's total earnings at FedEx Ground during the year prior to the date of injury by 52 weeks. A FedEx Ground computation sheet shows that claimant earned $8,343.55 at FedEx Ground during the year prior to the date of injury. Thus, relator set the AWW at $160.45 ($8,343.55 divided by 52 equals $160.45).

{¶ 26} 5. Claimant earned $250.80 at FedEx Ground during the week prior to the date of injury. Relator used this figure for the FWW because claimant's total earnings for the six-week period prior to the injury date divided by six produced

a figure less than the $250.80 claimant earned during the one week prior to the date of injury.

{¶ 27} 6. Following the industrial injury, relator was able to accommodate claimant's medical restrictions for a while. However, effective January 24, 2007, relator began paying claimant temporary total disability ("TTD") compensation because it could no longer accommodate the restrictions.

{¶ 28} 7. Claimant earned approximately $13,220.88 from Integrated during the year prior to the date of injury.

{¶ 29} 8. On April 11, 2007, claimant moved that his AWW and FWW be reset by the commission.

{¶ 30} 9. Following a May 15, 2007 hearing, a district hearing officer ("DHO") issued an order granting claimant's motion and resetting AWW and FWW respectively at $417.05 and $457.36. The DHO's order explains:

The Full Weekly Wage (FWW) is SET at $457.36 based upon $2,744.20 divided by 6 weeks.

The Average Weekly Wage (AWW) is SET at $417.05 based upon $21,686.43 divided by 52 weeks.

The Industrial Commission invokes special circumstances in order to do substantial justice to the injured worker. Injured worker was working at 2 different jobs during the year prior to injury and also had his own business. The business did not generate any net income; therefore, no figures from the self-employment are considered. The wages from both the instant employer and the other employer are added together to do substantial justice. The employer's argument that the case of *Lipsky vs. Patricia [Patrick] Barry* [ (Dec. 11, 1990), Franklin App. No. 90AP-07, 1990 WL 204741] demands that only wages from similar occupations be added together is found not well taken. In the case *Village of Huntsville vs. Indus. Comm.* [Franklin App. No. 04AP-281, 2004-Ohio-6615, 2004 WL 2829029], wages from dissimilar occupations were added together for both FWW and AWW calculations in order to do substantial justice.

{¶ 31} 10. Relator administratively appealed the DHO's order of May 5, 2007.

{¶ 32} 11. Following a June 29, 2007 hearing, a staff hearing officer ("SHO") issued an order stating that the DHO's order is modified. The SHO's order explains:

The order of the District Hearing Officer, from the hearing dated 5/15/07 is MODIFIED to the following extent. Therefore the injured worker's request contained on a C-86 motion, dated 4/11/07, to reset the Average Weekly Wage (AWW) and Full Weekly Wage (FWW) rate is GRANTED.

The Hearing Officer finds special circumstances to warrant the re-calculation of the AWW and the FWW settings.

Specifically, the Hearing Officer finds special circumstances in that during the period of the year prior to injured worker's injury in this claim, he was employed, part-time, for the instant employer, and was also employed, part-time, with a company named Integrated [P]est Control. He also was operating his own business, Affordable Animal Removal, at a loss during that time frame.

The Hearing Officer finds that in order to do substantial justice to injured worker, the wage from both part-time employers must be utilized in calculating the FWW and AWW settings. The Hearing Officer also finds that utilizing the wages from both employers would not provide the injured worker with a windfall. Therefore, both requirements of *State ex rel. Wireman [Firestone Tire & Rubber Co.] vs. Indus. Comm.* (1990) 49 Ohio St.3d 283 [551 N.E.2d 979] have been met. The Hearing Officer notes that a regular work week of less than 40 hours may be considered a special circumstance which has required a different calculation.

Therefore, the Hearing Officer orders the the [sic] FWW rate be SET at $457.36 based upon $2,744.20 divided by 6 weeks.

The AWW rate is SET at $417.05 based upon $21,686.43 divided by 52 weeks. The figure of $21,686.43 is utilized by adding the wages for the year prior from Fedex and Integrated [P]est Control. No wages are utilized from the Affordable Animal Removal company as injured worker did operate that company at a loss in the year prior to his injury.

Therefore, the Hearing Officer finds that the resetting of the AWW and FWW rates will provide injured worker with substantial justice as required by O.R.C. 4123.61 and the previously paid compensation is ordered adjusted accordingly.

This finding is based upon the wage information submitted to the file, and injured worker's testimony at hearing.

{¶ 33} 12. On July 27, 2007, another SHO refused relator's administrative appeal from the SHO's order of June 29, 2007.

{¶ 34} 13. On September 22, 2007, the three-member commission mailed an order denying relator's request for reconsideration.

{¶ 35} 14. On November 19, 2007, relator, FedEx Ground Package System, Inc., filed this mandamus action.

Conclusions of Law:

{¶ 36} It is the magistrate's decision that this court deny relator's request for a writ of mandamus, as more fully explained below.

{¶ 37} R.C. 4123.61 currently states:

The average weekly wage of an injured employee at the time of the injury or at the time disability due to the occupational disease begins is the basis upon which to compute benefits.

In cases of temporary total disability the compensation for the first twelve weeks for which compensation is payable shall be based on the full weekly wage of the claimant at the time of the injury or at the time of the disability due to occupational disease begins. * * *

Compensation for all further temporary total disability shall be based as provided for permanent disability claims.

In death, permanent total disability claims, permanent partial disability claims, and impairment of earnings claims, the claimant's or the decedent's average weekly wage for the year preceding the injury or the date the disability due to the occupational disease begins is the weekly wage upon which compensation shall be based. In ascertaining the average weekly wage for the year previous to the injury, or the date the disability due to the occupational disease begins any period of unemployment due to sickness, industrial depression, strike, lockout, or other cause beyond the employee's control shall be eliminated.

In cases where there are special circumstances under which the average weekly wage cannot justly be determined by applying this section, the administrator of workers' compensation, in determining the average weekly wage in such cases, shall use such method as will enable the administrator to do substantial justice to the claimants. * * *

{¶ 38} In *State ex rel. Smith v. Indus. Comm.* (1933), 127 Ohio St. 217, 220, 187 N.E. 768, the Supreme Court of Ohio had occasion to interpret and apply the phrase "average weekly wages" as it appeared in G.C. 1465–79. According to the *Smith* court, the statute read:

In case of temporary disability, the employee shall receive sixty-six and two-thirds per cent. of his average weekly wages so long as such disability is total.

{¶ 39} The *Smith* court also noted that G.C. 1465–84 read as follows:

The average weekly wage of the injured person at the time of the injury shall be taken as the basis upon which to compute the benefits.

Id.

{¶ 40} In *Smith*, while employed as volunteer firemen, the relators were seriously injured while en route to a fire. The relators were also concurrently employed as a baker and restaurant worker, respectively. The *Smith* court observed that it cannot seriously be contended that employment as a baker or restaurant worker is in any way related to employment as a volunteer fireman.

{¶ 41} As the *Smith* court put it, does the phrase "average weekly wages" mean the amount received by the relators as firemen, or does it include the amount received as firemen and also the amount accruing from regular occupations?

{¶ 42} The *Smith* court recognized that the question to be decided was new in Ohio. It noted that courts of other jurisdictions had held that where an employee engaged in similar work for two or more employers at the time of an injury, his compensation should be based on the amount that he usually earned in the particular kind of employment rather than on the amount he had been receiving from the particular employer in whose service he was engaged at the time of injury. Thus, the *Smith* court recognized the existence of a so-called similar-employment doctrine held by other state jurisdictions in AWW cases.

{¶ 43} The *Smith* court explained its interpretation of the phrase "average weekly wages":

While it has always been the policy of this court to construe liberally the provisions of the Workmen's Compensation Act in favor of injured employees and their dependents, we should have to resort to a dubious and forced construction of our statutes to hold that the phrase "average weekly wages" as used therein was intended to cover both the earnings of an employee in the particular work he was performing when injured and the remuneration received in a distinct and separate employment, in which he was generally engaged, and which was not connected in any way with the employment in which the injury was suffered.

Id. at 221, 187 N.E. 768.

{¶ 44} The *Smith* court held:

We hold, upon the facts in these cases, that the relators are not entitled to awards by the Industrial Commission, as respondent, on a basis including their earnings as a baker and restaurant worker, respectively.

Id.

{¶ 45} The *Smith* court's syllabus reads:

In determining workmen's compensation based upon the average weekly wage under sections 1465–79 and 1465–84, General Code, the Industrial Commission is limited to the average weekly wage received in the employment in which the injury occurred, where claimant was injured while serving as a member of a volunteer fire department, and was also generally engaged in another separate and distinct line of work.

{¶ 46} In *Lipsky v. Barry* (Dec. 11, 1990), Franklin App. No. 90AP–07, 1990 WL 204741, this court had occasion to address the *Smith* case in a mandamus action brought by relator Ralph Lipsky, who was injured while tending bar at Lee's Café. The claim was allowed, and Lipsky was awarded TTD compensation. An Ohio Bureau of Workers' Compensation claims examiner set Lipsky's AWW at $100 based upon Lipsky's yearly income at Lee's Café divided by 52 weeks.

{¶ 47} Lipsky moved for a recalculation of his AWW based upon his earnings from working two days a week at a second bar, Bill's Open Door. A commission hearing officer reset the AWW at $111.65, and the decision was administratively affirmed. The order contained no reference to the wages Lipsky allegedly earned at Bill's Open Door.

{¶ 48} The *Lipsky* court noted that one issue before it was "whether wages received in employment concurrent with but separate from the employment in which the injury occurred are included when calculating the average weekly wage under R.C. 4123.61." *Lipsky,* 1990 WL 204741, *2.

{¶ 49} In addressing the *Smith* case, the *Lipsky* court noted that R.C. 4123.61 (formerly G.C. 1465–84) was amended only four years after the *Smith* decision was released. At that time, the legislature inserted the paragraph that directs the commission to calculate the AWW by any means that will enable it to do substantial justice to the claimant when special circumstances exist. The *Lipsky* court then noted that at least one commentator is of the opinion that the amendment was intended to correct the harsh impact of the *Smith* case.

{¶ 50} Citing *State ex rel. Wireman v. Indus. Comm.* (1990), 49 Ohio St.3d 286, 551 N.E.2d 1265, the *Lipsky* court, at *3, noted that "[m]ore recent case law" emphasizes that the AWW must do substantial justice to the claimant, while avoiding a windfall. The court also noted that in *Wireman,* special circumstances had been found where the claimant had worked part-time rather than a full-time work week.

{¶ 51} The *Lipsky* court reasoned:

We conclude that R.C. 4123.61 requires the commission when calculating the average weekly wage to consider all wages earned in concurrent employments, at least if they are similar to the employment in which the claimant is injured. This conclusion follows both from the language of R.C. 4123.61 and the *Smith*

case, which recognized the similar employment doctrine. R.C. 4123.61 directs the commission to do substantial justice when calculating the average weekly wage considering special circumstances. Special or unusual circumstances have been found where the claimant works a part-time rather than a fulltime work week. *Wireman, supra*, at 289, 551 N.E.2d 1265.

In this case, relator is apparently employed part-time by both Lee's Cafe and Bill's Open Door. This is a special or unusual circumstance which the commission is directed to consider under R.C. 4123.61. This is also consistent with the holding in *Wireman* that the average weekly wage calculation must do substantial justice while avoiding a windfall. A windfall will not result concerning similar employment as the claimant will most probably be disabled from both jobs. In any case, if the claimant is capable of performing a job similar to that in which he was injured, this fact would support the termination of temporary total benefits altogether. Aggregating concurrent employments creates no more windfall for the claimant, nor burden on the employer, than using an average of the past years wages as is directed by R.C. 4123.61.

Moreover, the Supreme Court recognized but distinguished the similar employments doctrine in *Smith, supra*. Given this fact and the subsequent amendment of R.C. 4123.61, the statute at least requires the commission to consider wages earned in employment similar to that in which the claimant was injured. As there is no indication that the commission considered the evidence of relator's employment at Bill's Open Door, an abuse of discretion results and further consideration is warranted.

*Lipsky,* 1990 WL 204741, *3–4.

{¶ 52} Several observations are in order regarding the *Smith* and *Lipsky* cases. First, the *Smith* decision, 127 Ohio St. 217, 187 N.E. 768, rested on interpretation of the meaning of the phrase "average weekly wages." Second, the special circumstances provision of R.C. 4123.61 was not in existence at the time of the *Smith* decision. Third, while acknowledging the *Smith* case, the *Lipsky* court found special circumstances when concurrent similar employments exist. Fourth, the *Lipsky* court was careful not to adopt the *Smith* doctrine regarding similar employments. In that regard, the *Lipsky* court concluded that R.C. 4123.61 requires the commission to consider all wages earned in concurrent employments, *at least* if they are similar to the employment in which the claimant is injured.

{¶ 53} In the magistrate's view, given the above analysis, neither *Smith* nor *Lipsky* prohibit the commission's decision rendered here.

{¶ 54} As this court held in *Lipsky,* 1990 WL 204741, concurrent employment can produce the special circumstances under R.C. 4123.61 that permit the commission to include wages from both employments in calculating AWW.

{¶ 55} Given *Lipsky* 's holding, the issue here is whether the commission abused its discretion in determining that special circumstances require inclusion of wages from FedEx Ground and Integrated in the AWW calculation.

{¶ 56} The phrase "special circumstances" is not defined by the statute, but special circumstances have generally been confined to uncommon situations. *Wireman,* 49 Ohio St.3d at 288, 551 N.E.2d 1265. Moreover, special circumstances can be invoked only if the standard calculation yields a result that is substantially unjust. *State ex rel. Cawthorn v. Indus. Comm.* (1997), 78 Ohio St.3d 112, 115, 676 N.E.2d 886; *State ex rel. Clark v. Indus. Comm.* (1994), 69 Ohio St.3d 563, 566, 634 N.E.2d 1014.

{¶ 57} AWW is designed to find a fair basis for award of *future* compensation. *State ex rel. Riley v. Indus. Comm.* (1983), 9 Ohio App.3d 71, 73, 458 N.E.2d 428. The AWW should approximate the average amount that the claimant would have received had he continued working after the injury as he had before the injury. *State ex rel. Erkard v. Indus. Comm.* (1988), 55 Ohio App.3d 186, 188, 563 N.E.2d 310.

{¶ 58} In calculating AWW, two considerations dominate. First, the AWW must do substantial justice to the claimant. Second, it should not provide a windfall. *Wireman,* 49 Ohio St.3d at 287, 551 N.E.2d 1265.

{¶ 59} The SHO's order of June 29, 2007, indicates that the standard calculation yields a result that is substantially unjust. As the SHO explained, claimant was employed part time at two different jobs.

{¶ 60} If the industrial injury removes claimant from both jobs, an AWW based exclusively upon the wages earned at the job of injury produces a result that is substantially unjust, because it does not proximate the average amount that claimant would have received had he continued working at both jobs after the injury, as he had before the injury. Significantly, under Ohio law, if an injured worker cannot return to his former position of employment, but continues to work at another job, he is not entitled to TTD compensation. *State ex rel. Johnson v. Rawac Plating Co.* (1991), 61 Ohio St.3d 599, 575 N.E.2d 837. Therefore, an injured worker who is not disabled by the industrial injury from his other job will not obtain a windfall if AWW is based upon earnings from concurrent employment.

{¶ 61} Thus, as the SHO's order of June 29, 2007 found, the *Wireman* standard for special circumstances is met.

{¶ 62} Accordingly, for all the above reasons, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.